# 23-1051

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE SECOND CIRCUIT

ENDURANCE SPECIALTY INSURANCE LIMITED,

*Petitioner-Appellant,*

*v.*

HORSESHOE RE LIMITED, ON BEHALF OF AND FOR THE BENEFIT OF ITS SEPARATE ACCOUNTS HS0083 AND HS0084,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PETITIONER-APPELLANT

David A. Attisani
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000
dattisani@choate.com

Melissa R. Ginsberg
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
(646) 829-9403
ginsberg@braunhagey.com

*Attorneys for Petitioner-Appellant, Endurance Specialty Insurance Limited, on Behalf of Itself and its Branches and Affiliates*

February 14, 2024

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

I.    THE DISTRICT COURT ERRED WHEN IT EXERCISED SUBJECT MATTER JURISDICTION OVER THE PETITION. .......................................................................................3

    A.    Neither The Convention Nor The Federal Arbitration Act Grants To A Federal Trial Court Subject Matter Jurisdiction Over Submissions Like The Petition. ....................3

    B.    Horseshoe's Arguments Contravene The Plain Language Of The Convention, The FAA, And This Court's Teaching. .......................................................................................5

II.    THE DISTRICT COURT ERRED WHEN IT DISMISSED THE PETITION. .................................................................................11

    A.    Bermuda Law Permits A U.S. Court To Remove A Biased Arbitrator.......................................................................11

    B.    Eder's Illegitimate Appointment As Umpire And His Conduct In The Arbitration Present A "Real Danger of Bias". ...............................................................................16

CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albaniabeg Ambiet Sh.p.k. v. Enel S.p.A.*,
169 F. Supp. 3d 523 (S.D.N.Y. 2016) ...........................................................6, 10

*Allianz Global Corporate & Specialty SE v. HBC US Holding*,
No. 1:23-cv-0553 (JLR), 2023 U.S. Dist. LEXIS 137013 (S.D.N.Y. Aug.
4, 2023) .........................................................................................................9, 10

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*,
492 F.3d 132 (2d Cir. 2007) ...............................................................................20

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*,
No. 05 CV 10540 (RPP), 2006 U.S. Dist. LEXIS 44789 (S.D.N.Y. June
28, 2006) ..............................................................................................................18

*Astoria Medical Group v. Health Ins. Plan of Greater New York*,
11 N.Y.2d 128 (1962) ..........................................................................................15

*Aviall, Inc. v. Ryder Sys., Inc.*,
110 F.3d 892 (2d Cir. 1997) ...............................................................................14

*Barcon Assocs., Inc. v. Tri-County Asphalt Corp.*,
86 N.J. 179 (1981) ...............................................................................................19

*Borden, Inc. v. Meiji Milk Prod. Co.*,
919 F.2d 822 (2d Cir. 1990) .................................................................................4

*Brennan-Centrella v. Ritz-Craft Corp. of Pa.*,
942 F.3d 106 (2d Cir. 2019) ...............................................................................13

*CarVal Inv'rs UK Ltd. v. Giddens (In re Lehman Bros.)*,
791 F.3d 277 (2d Cir. 2015) ...............................................................................13

*Chevron U.S.A. v. Echazabal*,
536 U.S. 73 (2002) ...............................................................................................12

*Cordiano v. Metacon Gun Club, Inc.*,
   575 F.3d 199 (2d Cir. 2009) ..............................................................13

*CRT Capital Grp. V. SLS Capital, S.A.*,
   63 F. Supp. 3d 367 (S.D.N.Y. 2014) ...................................................6

*Delaware v. Pennsylvania*,
   Nos. 220145, 220146, 2021 U.S. LEXIS 6295 (July 23, 2021) ........12

*Doctor's Assocs. V. Distajo*,
   107 F.3d 126 (2d Cir. 1997) ..............................................................15

*Eisen v. Venulum Ltd.*,
   244 F. Supp. 3d 324 (W.D.N.Y. 2017)...............................................14

*Espiritu Santo Holdings, LP v. L1bero Partners, LP*,
   2019 U.S. Dist. LEXIS 84844 (S.D.N.Y. May 14, 2019) ...................9

*Fernandez v. Zoni Language Ctrs., Inc.*,
   858 F.3d 45 (2d Cir. 2017) ................................................................13

*Holzer v. Mondadori*,
   12 Civ. 5234 (NRB), 2013 U.S. Dist. LEXIS 37168 (S.D.N.Y. Mar. 14,
   2013) ...............................................................................................7, 10

*Huntsman Int'l, LLC v. Albemarle Corp.*,
   2021 N.Y. Misc. LEXIS 1521 (N.Y. Sup. Ct. Apr. 5, 2021) ............15

*Int'l Shipping Co. v. Hydra Offshore, Inc.*,
   875 F.2d 388 (2d Cir. 1989) ...........................................................4, 5

*Kolel Beth Yechiel Mechil of Tarikov, Inc. v. YII Irrevocable Tr.*,
   863 F. Supp. 2d 351 (S.D.N.Y. 2012) .................................................9

*Medellin v. Texas*,
   128 S. Ct. 1346 (2008).........................................................................4

*Mehlenbacher v. Akzo Nobel Salt, Inc.*,
   216 F.3d 291 (2d Cir. 2000) ..........................................................3, 17

*Raydon Underwriting Mgmt. Co. v. Stockholm Re (Bermuda) Ltd. (in Liquidation)*
  1998 Civil Jur. No. 231................................................................................*passim*

*Republic of Ecuador v. Chevron Corp.*,
  638 F.3d 384 (2d Cir. 2011) ............................................................4, 9

*Republic of Kaz. V. Chapman*,
  585 F. Supp. 3d 597 (S.D.N.Y. 2022) .....................................5, 7, 10

*Richco Structures v. Parkside Vill., Inc.*,
  82 Wis. 2d 547 (1978) ......................................................................19

*Rosenhaus v. Jackson*,
  No. CV-14-3154-MWF, 2016 U.S. Dist. LEXIS 122398 (C.D. Cal. Feb.
  26, 2016) ...........................................................................................18

*Sanko S.S. Co., Ltd. v. Cook Industries, Inc.*,
  495 F.2d 1260 (2d Cir. 1973) ...........................................................19

*Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*,
  748 F.3d 708 (6th Cir. 2014) ............................................................14

*Scandinavian Reins. Co. v. St. Paul Fire & Marine Ins. Co.*,
  668 F.3d 60 (2d Cir. 2012) ..........................................................8, 10

*Schmitz v. Zilveti*,
  20 F.3d 1043 (9th Cir. 1994) ............................................................18

*Schorr v. American Arb. Ass'n*,
  583 F. Supp. 3d 608 (S.D.N.Y. 2022) ................................................9

*Volt Info Scis. V. Bd. of Trs.*,
  489 U.S. 468 (1989)...........................................................................15

*Watson Pharms., Inc. v. Bayer Pharma AG*,
  12 Civ. 6089 (PGG), 2013 U.S. Dist. LEXIS 141833 (S.D.N.Y. Sept. 30,
  2013) ..................................................................................................11

*WJ Holding Ltd. v. Shireen Mar. Ltd.*,
  No. 20 CV 1068 (LDH) (CLP), 2020 U.S. Dist. LEXIS 223312
  (E.D.N.Y. Nov. 25, 2020)............................................................7, 10

*Wynn v. AC Rochester*,
  273 F.3d 153 (2d Cir. 2001) ...............................................................11

**Statutes**

9 U.S.C. § 201 .........................................................................................3

9 U.S.C. § 202 ......................................................................................5, 6

9 U.S.C. § 203 ................................................................................*passim*

9 U.S.C. § 205 ......................................................................................5, 6

9 U.S.C. § 206 ......................................................................................5, 7

28 U.S.C. § 1331 .....................................................................................3

28 U.S.C. § 1332 .....................................................................................3

Barry R. Ostrager & Mary Kay Vyskocil, *Modern Reinsurance Law and
  Practice* 553 (3d. ed. 2014) ...............................................................15

*Bermuda Arbitration Act of 1986*, § 34 ................................................11

**Other Authorities**

*Advance Arbitrator Search Results*, ARIAS U.S., https://www.arias-
  us.org/arias-us-dispute-resolution-process/online-arbitrator-search-
  system/?screen=results (last visited Feb. 9, 2023) ..............................3

Convention on Recognition and Enforcement of Foreign Arbitral Awards,
  Art. I(1) .............................................................................................3, 4

Convention on Recognition and Enforcement of Foreign Arbitral Awards,
  Art. II(3).............................................................................................3, 4

# INTRODUCTION

A federal district court has no subject matter jurisdiction over a dispute between two foreign entities, which is not governed by federal law. This case presents such a dispute. In 2022, Endurance filed a petition (the "Petition") asking a New York state court to disqualify a contractually unqualified Umpire who presented a "real danger of bias" in an arbitration between Endurance and Horseshoe[1], regarding two reinsurance contracts (the "Contracts") governed entirely by New York substantive law and Bermuda procedural law. When Horseshoe removed the Petition to federal court, Endurance asked the district court to remand for lack of subject matter jurisdiction. The district court declined to remand and instead dismissed the Petition outright. Endurance appealed to this Court.

In its current Opposition to Endurance's appeal, Horseshoe asks this Court to invoke the Federal Arbitration Act (the "FAA") and the Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") to invent subject matter jurisdiction where none exists.[2] To apply the FAA and the Convention to a Petition to disqualify an Umpire for bias under Bermuda law would be to extend the

---

[1]     Horseshoe is the agent for a hedge fund, Hudson Structured Capital Management, which is the real financial party in interest. In essence, the "Respondent" here is two bank accounts.

[2]     Hereinafter references to the "Opposition" or "Opp." refer to Horseshoe's Brief for Respondent-Appellee, filed on January 24, 2024.

district court's reach beyond the Convention, beyond the FAA, and beyond all prior authority of this Court -- or any other court in this Circuit -- simply because, as Horseshoe urges, the Petition "relates" to an arbitration between non-domestic parties. No other court, apart from the trial court below, has ever ratified that vast view of the federal judiciary's province, and neither should this Court.

Even if the district court had jurisdiction to address the Petition -- and it did not -- the Petition should have been granted because the facts surrounding appointment of the umpire, Bernard Eder ("Eder"), present a real danger of bias against Endurance and in favor of Horseshoe. Tellingly, the Opposition, even in its unusually devout support of Eder's appointment, never disputes any of the facts reflecting the danger of bias he presents. Under Bermuda law, these undisputed facts create a manifestly uneven playing field requiring Eder's disqualification. *See, e.g.*, *Raydon Underwriting Mgmt. Co. v. Stockholm Re (Bermuda) Ltd. (in Liquidation)* 1998 Civil Jur. No. 231 (Bermuda Supreme Court) [JA 156]. If this Court determines that subject matter jurisdiction exists -- and it should not -- the Court should remove Eder as umpire.[3]

---

[3]     As a practical matter, Horseshoe has never explained in any forum why Eder -- one among *hundreds*, if not *thousands*, of global candidates to sit on the subject reinsurance arbitration panel -- is so uniquely qualified that Horseshoe is willing to defend his candidacy through an ICC appeal and three court battles to date. As Endurance explained in its Opening Brief, the AIDA Reinsurance and Insurance Arbitration Society ("ARIAS-US") -- one of several trade groups to offer industry

# ARGUMENT

## I. THE DISTRICT COURT ERRED WHEN IT EXERCISED SUBJECT MATTER JURISDICTION OVER THE PETITION.

### A. Neither The Convention Nor The Federal Arbitration Act Grants To A Federal Trial Court Subject Matter Jurisdiction Over Submissions Like The Petition.

The district court had no subject matter jurisdiction over the Petition, and accordingly had no authority to dismiss it. *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 299 (2d Cir. 2000). The Petition -- a dispute between two foreign entities, seeking to replace an Umpire for a "real danger of bias," *Raydon*, 1998 Civil Jur. No. 231 [JA 156], under Bermuda law -- was devoid of any citizenship diversity or federal question. JA 009-013. Absent those statutory prerequisites to the limited federal jurisdiction, the Petition belongs in state court. *See* 28 U.S.C. §§ 1331, 1332.

Neither the Convention nor the FAA provision adopting the Convention as federal law alters the black letter analysis. The Convention and the FAA cannot confer subject matter jurisdiction on the district court, as neither applies to -- or indeed even references -- a party's request to disqualify a biased umpire from an arbitration. *See Convention*, Art. I(1), Art. II(3); 9 U.S.C. § 201, *et seq.*

---

arbitrator candidates -- maintains a list of more than 100 arbitrators qualified in the United States alone. *See Advance Arbitrator Search Results*, ARIAS U.S., https://www.arias-us.org/arias-us-dispute-resolution-process/online-arbitrator-search-system/?screen=results (last visited Feb. 9, 2023). It would not require much in the way of inference to understand that Horseshoe is intent on preserving its unfair advantage here in the person of Eder.

To the contrary, by its plain text, the Convention applies only to the "*recognition and enforcement of arbitral awards*," or to "*refer the parties to arbitration*." *Convention*, Art. I(1), Art. II(3) (emphasis added). The Supreme Court has repeatedly required courts to apply the plain text of a treaty. *See Medellin v. Texas*, 128 S. Ct. 1346, 1357 (2008) ("The interpretation of a treaty, like the interpretation of a statute, begins with its text."). Here, the Convention says nothing about the removal of an umpire from an arbitration. As a result, there is no jurisdiction on the plain text of the Convention.

The FAA, in turn, confers subject matter jurisdiction only over "*[an] action or proceeding falling under the Convention*." 9 U.S.C. § 203 (emphasis added). As this Court has held, an "action or proceeding" falls under the Convention *only if* a party seeks to: compel arbitration, enforce or vacate an arbitral award; obtain a preliminary injunction in aid of arbitration; or, stay arbitration proceedings for the purpose of enforcing the court's prior judgments. *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 n.6 (2d Cir. 2011); *Borden, Inc. v. Meiji Milk Prod. Co.*, 919 F.2d 822, 829 (2d Cir. 1990); *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 n.5 (2d Cir. 1989) ("*Hydra*"). Any broader interpretation requires a wishful and additive reading of federal case law.

Because the Petition seeks *none* of the prescribed remedies, in either form or substance, neither the Convention nor the FAA re-locates the Petition within the

4

federal trial court's reach.  *See Hydra*, 875 F.2d at 391, n.5.  No federal court had ever held otherwise until the district court committed error below.  *See* Opening Br. at 17-18.

### B. Horseshoe's Arguments Contravene The Plain Language Of The Convention, The FAA, And This Court's Teaching.

In the face of this Court's well-developed body of decisions to the contrary, Horseshoe's Opposition asserts that a federal court may exercise subject matter jurisdiction over a Petition to disqualify an umpire, absent diversity or a federal question, because the Petition "*relates*" to an international commercial arbitration. *See, e.g.*, Opp. at 15.  But, this chimerical "rule" finds no support in the Convention. The Convention does not say that it applies to any matter "relating to" an international commercial arbitration and, for this reason alone, this Court should reject Horseshoe's invented jurisdictional test and remand the Petition to state court.

Moreover, Horseshoe's argument relies on exertions to mischaracterize the FAA and this Court's prior decisions.  As an example, the Opposition refracts and rearranges a handful of provisions in the FAA, including Sections 202, 205 and 206, in an effort to disinter some basis for subject matter jurisdiction.  Ultimately, Horseshoe's attempts to discern grounding for federal jurisdiction embedded in provisions of the FAA other than Section 203 are unavailing, because only Section 203 can possibly confer subject matter jurisdiction.  *See, e.g., Republic of Kaz. V.*

*Chapman*, 585 F. Supp. 3d 597, 604 (S.D.N.Y. 2022) ("§ 203 serves to create subject matter jurisdiction."). Horseshoe nonetheless contends that because the Petition "concerns *arbitration agreements* falling under the Convention *pursuant to Section 202*, the *action itself* falls under the Convention within the meaning of *Section 203*." Opp. at 15 (emphasis added). On its face, the argument conflates Section 202 with Section 203. *See* SPA 008; JA 236. Section 202 establishes only the jurisdictional requirements for an arbitration agreement or award; it does not establish the jurisdictional requirements for the action or proceeding. *See CRT Capital Grp. V. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 374 (S.D.N.Y. 2014) (Section 202 determines whether an "arbitration agreement or arbitral award" "falls under the Convention.").

Horseshoe's Opposition is also constrained to merge FAA Sections 205 and 203. Section 205 permits removal of an action that "relates to an arbitration agreement or award falling under the Convention," 9 U.S.C. § 205. Per Horseshoe, Section 205 "informs the interpretation of Section 203"; as a result, according to Horseshoe, if an action "relates to an arbitration" under Section 205, a federal trial court would have subject matter jurisdiction under Section 203. Opp. at 15-16. Horseshoe is demonstrably wrong. Section 205 is a "removal statute that does not confer subject matter jurisdiction," *Albaniabeg Ambiet Sh.p.k. v. Enel S.p.A.*, 169 F. Supp. 3d 523, 528 (S.D.N.Y. 2016), and courts in this Circuit have determined that "removal authorization under Section 205 is distinct from the question of subject

matter jurisdiction under Section 203." *WJ Holding Ltd. v. Shireen Mar. Ltd.*, No. 20 CV 1068 (LDH) (CLP), 2020 U.S. Dist. LEXIS 223312, at \*16, 20 (E.D.N.Y. Nov. 25, 2020) ("[A]lthough the interpretation of removal under Section 205 may be broad, courts in this Circuit have narrowly construed the grant of subject matter jurisdiction under Section 203."); *see also Republic of Kaz.*, 585 F. Supp. 3d at 604 ("§ 203 serves to create subject matter jurisdiction, **whereas § 205 serves only to authorize removal**…This conclusion is consistent with the weight of the authority on this issue in the Second Circuit.") (emphasis added). In other words, the standard authorizing removal is understandably different from the rules policing inherently and intentionally narrow federal court jurisdiction.

The Opposition also ventures that the district court could exercise subject matter jurisdiction over the Petition, because "Endurance is seeking a remedy expressly authorized by 9 U.S.C. § 206." Opp. at 23. Horseshoe is wrong again. Section 206 *does not* confer subject matter jurisdiction over a Petition seeking to disqualify an umpire. Instead, it expressly provides: "A court *having jurisdiction* under this chapter . . . may also appoint arbitrators." 9 U.S.C. § 206 (emphasis added). In other words, Section 206 merely describes those remedies a district court may grant when it *already* has subject matter jurisdiction; Section 206 does not itself create such jurisdictional authority. *See Holzer v. Mondadori*, 12 Civ. 5234 (NRB),

2013 U.S. Dist. LEXIS 37168, at *35 (S.D.N.Y. Mar. 14, 2013) ("[S]ection 206 []

authorizes courts having jurisdiction under chapter 2 of the FAA.").[4]

After rewriting the FAA, Horseshoe is constrained to mischaracterize the law

of this Circuit in an effort to justify the result it seeks.  According to the Opposition,

Horseshoe perceives a "trend in the Second Circuit and elsewhere [] toward a far

broader reading of Section 203 than that proposed by Endurance."  Opp. at 18.

Horseshoe's musings are not grounded in any authority.  To the contrary, courts in

this Circuit -- including almost every district court case cited in the Opposition --

limit the grant of federal subject matter jurisdiction potentially available under

Section 203 to actions seeking to: compel arbitration; enforce or vacate an arbitral

award; obtain a preliminary injunction in aid of arbitration; or, stay arbitration

proceedings for the purpose of enforcing this court's prior judgments.  *See* Opening

Br. at 19, 24.  Horseshoe may wish to extrapolate from those rulings to broaden the

girth of Second Circuit teaching, but the decisions do not go there.  Specifically, the

Opposition cites:

- *Scandinavian Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, where this
  Court found subject matter jurisdiction to **vacate** an arbitration award,
  668 F.3d 60, 71 (2d Cir. 2012);

---

[4]      In this case, Endurance is not merely asking a court to "appoint" an arbitrator.
Instead, the Petition asked the state court to *disqualify* and *replace* an arbitrator based
on the "real danger of bias" he brings.  *See, e.g.*, *Raydon*, 1998 Civil Jur. No. 231
[JA 156]; JA 015.  Those remedies are not addressed at all in the Convention or the
FAA.

- *Republic of Ecuador v. Chevron Corp.*, where this Court found subject matter jurisdiction to **stay incompatible** arbitration proceedings, 638 F.3d 384, 391 n. 6;

- *Espiritu Santo Holdings, LP v. L1bero Partners, LP*, where a district court exercised subject matter jurisdiction over a **preliminary injunction** in aid of arbitration, No. 19 Civ 3930 (CM), 2019 U.S. Dist. LEXIS 84844, at *5 (S.D.N.Y. May 14, 2019);

- *Schorr v. American Arb. Ass'n*, where a district court exercised subject matter jurisdiction over a matter that "'[i]n sum and substance' was 'an **attempt to vacate'** an arbitral decision." 583 F. Supp. 3d 608, 618 (S.D.N.Y. 2022) (quoting *Kolel Beth Yechiel Mechil of Tarikov, Inc. v. YII Irrevocable Tr.*, 863 F. Supp. 2d 351, 356 (S.D.N.Y. 2012)).

In short, the Opposition points to *no* case holding what the district court held below. Even *Allianz*, which Horseshoe brandishes as evidence of a distended Section 203, badly misses the mark for a number of reasons. Opp. at 20-21; *see Allianz Global Corporate & Specialty SE v. HBC US Holding*, No. 1:23-cv-0553 (JLR), 2023 U.S. Dist. LEXIS 137013, at *6 (S.D.N.Y. Aug. 4, 2023). First, the Court in *Allianz* indisputably had diversity jurisdiction over the subject dispute. *Id.* at *10 ("Even if § 203 did not establish subject matter jurisdiction over this Petition, the Court otherwise has diversity jurisdiction over the parties."). Second, *Allianz* concerned a request to appoint an arbitrator to an empty seat on the relevant arbitration panel -- not a request to disqualify an arbitrator already appointed, albeit in derogation of the controlling contract. *Id.* Finally, *Allianz* suffers from the same flawed reasoning that infected the district court decision here. *See id.* (applying the

district court's "intimately intertwined" standard to a petition to "appoint a competent and disinterested umpire"); *see also* Opening Br. at 21-22. For that reason, and because the facts of *Allianz* are inapposite here, this Court should reverse the district court's error below before it becomes new and poorly conceived Second Circuit law.

To the extent any "trend" is discernable in this Circuit, it underscores increasing respect for Section 203's "relatively narrow jurisdictional grant," as "district courts in this circuit have cabined [S]ection 203" to cases that seek to compel arbitration, enforce or vacate an arbitral award, obtain a preliminary injunction in aid of arbitration, or stay arbitration proceedings for the purpose of enforcing this court's prior judgments. *See, e.g., Republic of Kaz.*, 585 F. Supp. 3d at 605; *see also WJ Holding Ltd.*, 2020 U.S. Dist. LEXIS 223312, at *17 ("the Second Circuit has interpreted [Section 203] narrowly, limiting it to actions to compel, confirm, or vacate an arbitral award"); *Holzer*, 2013 U.S. Dist. LEXIS 37168, at *19 (*citing Scandinavian Reins. Co.*, 668 F.3d at 71) (same); *Albaniabeg Ambient Sh.p.k.*, 169 F. Supp. 3d at 529 (finding no subject matter jurisdiction where "no party seeks to confirm or vacate an arbitral award, to compel arbitration, to stay or enjoin arbitration proceedings, or to obtain preliminary relief in aid of arbitration").

Under the plain text of the Convention, the FAA, and this Court's decisions, the Petition should have been remanded to state court where it was filed and where it belongs. *See Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) ("Federal courts, however, are courts of limited jurisdiction."); *Watson Pharms., Inc. v. Bayer Pharma AG*, 12 Civ. 6089 (PGG), 2013 U.S. Dist. LEXIS 141833, at *6-7 (S.D.N.Y. Sept. 30, 2013).

## II.     THE DISTRICT COURT ERRED WHEN IT DISMISSED THE PETITION.

### A.     Bermuda Law Permits A U.S. Court To Remove A Biased Arbitrator.

Bermuda law governs the question whether Eder may be disqualified for bias against Endurance and in favor of Horseshoe, and *no Bermuda authority* precludes this Court from removing him. JA 052; JA 077 ("The arbitration shall be conducted under, and the arbitration tribunal shall be governed by, the provisions of the Bermuda Arbitration Act 1986[.]"). The Bermuda Arbitration Act ("BAA") *permits* the Supreme Court of Bermuda to remove a biased and improperly seated umpire, like Eder. *Bermuda Arbitration Act of 1986*, § 34. The BAA could have precluded other courts from doing so as well, but it did not. *Id.* ("Where an arbitrator or umpire has misconducted himself or the proceedings, the Court [*i.e.*, the Supreme Court of Bermuda] may remove him."). It is precisely the situation now before this Court that commends the BAA framers' restraint. It would make no sense to preclude a

court with jurisdiction -- whether sitting in Bermuda or not -- from removing a biased decisionmaker, when the BAA is frequently drafted into global reinsurance and other contracts where non-Bermuda courts have (or share) jurisdiction.

In its Opposition, Horseshoe -- like the federal trial court below -- points to no authority precluding a New York court from disqualifying a biased umpire under the BAA. *See* Opp. at 26. Instead, Horseshoe is again compelled to extrapolate and imagine. It argues that, where the BAA permits the Supreme Court of Bermuda to disqualify an arbitrator, it *impliedly* forbids a federal trial court from doing so because "*expressio unius est exclusio alterius*" or "mention of one impliedly excludes others." Opp. at 26. Horseshoe's invocation of this maxim here is surprising and turns the plain meaning rule on its head. As a threshold matter, this infrequently used aphorism does not apply on our facts. *See Delaware v. Pennsylvania*, Nos. 220145, 220146, 2021 U.S. LEXIS 6295, at *106 (July 23, 2021) ("As with most canons, this one applies only when its application would be sensible."). To the contrary, *expressio unius est exclusio alterius* "depends on identifying a series of two or more terms or things that should be understood to go hand in hand . . . supporting a sensible inference that the term left out must have been meant to be excluded." *Chevron U.S.A. v. Echazabal*, 536 U.S. 73, 81 (2002). The Supreme Court of Bermuda and a U.S. District Court "are not so closely related" that the inclusion of one necessarily implies exclusion of the other. *Compare*

*Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 53 (2d Cir. 2017) ("special schools for the disabled or gifted are not so closely related to post-secondary career programs as to admit the necessary inference that all other instructional programs were deliberately excluded from the regulation"), *with Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 221 (2d Cir. 2009) (the definition of point source pollution as "surface runoff which is collected or channeled by man" implied the exclusion from the relevant definition of "surface water runoff which is neither collected nor channeled").

The "*expressio*" gambit is infrequently invoked because, as this Court has averred, "the maxim . . . [is] an uncertain guide to interpretation." *Brennan-Centrella v. Ritz-Craft Corp. of Pa.*, 942 F.3d 106, 111 (2d Cir. 2019). In fact, in the very case Horseshoe cites in an effort to buck it up, this Court warned against applying *expressio* to the statute at issue. *Id.* ("We are particularly aware of the shortcomings of this canon here[.]"). In addition, this Court has also held that the maxim "does not apply *unless* it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it." *CarVal Inv'rs UK Ltd. v. Giddens (In re Lehman Bros.)*, 791 F.3d 277, 288 (2d Cir. 2015) (emphasis added). Horseshoe proffers no such evidence here.

More fundamentally, Horseshoe *previously* agreed expressly to submit to a federal court's jurisdiction. JA 053; JA 078 ("[T]he Reinsurer [Horseshoe] . . . will

submit to the jurisdiction of a court of competent jurisdiction within the United States."). Horseshoe seeks to evade that express and bargained-for consent by contending that the *arbitration* must be "subject to . . . Bermuda jurisdiction."[5] Opp. at 27. To quote Horseshoe's flippant Opposition: "*So what?*" Opp. at 27. The arbitration itself *is* going to take place in Bermuda; under Bermuda jurisdiction; and Endurance has never asked any court to apply any procedural rules other than Bermuda law. *See* Opening Br. at 26 n.6; *see also Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 340 (W.D.N.Y. 2017) ("A federal court can apply foreign law[.]").

In fact, it is Horseshoe which tries to end-run Bermuda law when it argues that removing Eder would "flout[] the FAA", because the statute "does not provide for pre-award removal of an arbitrator." Opp. at 27-28 (quoting *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997)). That assertion is irrelevant because the FAA does not apply to the Contracts; only Bermuda procedural law and New York substantive law do; and because New York law, as articulated by Judge Ostrager and various New York courts, says the opposite. JA 052; JA 077; *see also Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708, 715-16 (6th

---

[5] The Opposition also speciously represents the parties' purported agreement that "any proceedings concerning [the arbitration's] conduct [would] take place in Bermuda." Opp. at 27. Instead, the Contracts indicate that the arbitration itself will take place in Bermuda, under Bermuda jurisdiction, but say nothing about where "proceedings concerning [the arbitration's] conduct" can or will take place. JA 052-53; JA 077-78.

Cir. 2014) ("Although the FAA generally preempts inconsistent state laws . . . parties may agree to abide by state rules of arbitration, and enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA.") (citations omitted); Barry R. Ostrager & Mary Kay Vyskocil, *Modern Reinsurance Law and Practice* 553 (3d. ed. 2014) ("Other courts hold that a challenge can be made during the course of the arbitration proceeding, before an award is issued.") (*citing Astoria Medical Group v. Health Ins. Plan of Greater New York*, 11 N.Y.2d 128 (1962)).

Absent FAA preemption -- which does not exist here, because the parties' bargained-for Contracts mandate application of Bermuda and New York law[6] -- New York law and Bermuda law each permit removal of an arbitrator before an award is issued. *See, e.g.*, *Raydon Underwriting Mgmt. Co. v. Stockholm Re (Bermuda) Ltd. (in Liquidation)* 1998 Civil Jur. No. 231 (Bermuda Supreme Court) (an arbitrator should be removed if "there is a real danger of bias"); *Huntsman Int'l, LLC v. Albemarle Corp.*, 2021 N.Y. Misc. LEXIS 1521, at *5 (N.Y. Sup. Ct. Apr. 5, 2021) ("New York courts have inherent power to disqualify an arbitrator before an award

---

[6]     *See, e.g.*, *Volt Info Scis. V. Bd. of Trs.*, 489 U.S. 468 (1989) ("Where [] the parties have agreed to abide by state arbitration rules, enforcing those rules according to the terms of the agreement is fully consistent with the FAA's goals."); *Doctor's Assocs. V. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) (no FAA preemption if "it is clear that the parties intended state arbitration law to apply").

has been rendered . . . rather than require the party to wait for the award, and then move to vacate . . . .") (citations omitted).

Distilled to its essence, Horseshoe's Opposition seeks to have its jurisdictional cake and eat it too. Horseshoe forcibly extracted the Petition from its state forum and into this federal one, insisting that the district court leverage the FAA to decide Endurance's request to disqualify an umpire under Bermuda law. *See* Opp. at 23. And now, happily settled in federal court and with enough distance from a state court that has effected precisely the pre-award biased arbitrator removal the Petition seeks, Horseshoe denies that the district court had any authority to grant the Petition in the first place, and even that the FAA forbids it. *See* Opp. at 24-28. Horseshoe's position surpasses hypocrisy. As paraphrased: the district court does have jurisdiction to take the case from Judge Ostrager in the state court; but on the other hand, the district court does not have jurisdiction when it comes to deciding the Petition. Respectfully, the district court should have rejected this inconsistent, unsupported, and commercially motivated position, and this Court should now do so.

> **B.** **Eder's Illegitimate Appointment As Umpire And His Conduct In The Arbitration Present A "Real Danger of Bias".**

Ultimately, this Court does not need to address the merits of the Petition concerning the "real danger of bias" Eder presents at arbitration, *Raydon*, 1998 Civil

Jur. No. 231 [JA 156], because the Petition's merits do not bear on the question whether the district court should have exercised subject matter jurisdiction over it, *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 299 (2d Cir. 2000) ("Because subject-matter jurisdiction is not established, we cannot and do not reach the merits of the question of New York tort law presented to us on appeal."). Endurance nonetheless addresses those merits briefly here, because the district court inexplicably reached for them below, and because Endurance remains at peril of incurring a corrupt award from an illegitimate umpire next month.[7]

The Opposition cannot, and therefore does not, deny the operative facts demonstrating a "real danger of bias" against Endurance and in favor of Horseshoe. *Raydon*, 1998 Civil Jur. No. 231 [JA 156]. It is undisputed that: (1) ICC disclosed to Eder that Horseshoe had specifically requested an umpire with Eder's precise background, even though the parties' bargained-for Contracts, the source of all arbitral authority, do not specify any such criteria; (2) ICC also disclosed to Eder that Endurance had repeatedly rejected the potential appointment of a candidate with Eder's precise credentials; (3) in a previous reinsurance arbitration -- resolved only two years ago -- where Eder served as Umpire, Endurance's lead counsel

---

[7] Eder declined to stay the arbitration in deference to this Court's decision, and an evidentiary hearing is scheduled to take place in Bermuda beginning on March 18.

(Choate/David Attisani) questioned Eder concerning Eder's possible commission of an ethical violation; (4) in the same previous case, Endurance's lead counsel (Attisani) obtained an order from a second reinsurance arbitration panel in a parallel proceeding achieving consolidation of Eder's arbitration into the second panel's arbitration, over Eder's objection, thereby depriving Eder of additional fees; (5) **Eder declined to disclose all of those facts** to the ICC during arbitration panel selection; and, (6) Eder fought against Endurance's ICC application seeking his removal. *See* Opening Br. at 27-31.[8]

Under Bermuda law, these undisputed facts more than demonstrate a "real danger of bias" against Endurance, the party facing past and present conflicts with Eder; and in favor of Horseshoe -- the party that fought, alongside Eder, to preserve

---

[8]   U.S. law concerning disqualification of arbitrators and vacatur of awards emphasizes the disinfectant value of disclosure and, as a corollary, the devastating effects of failures to disclose on an arbitrator's integrity and the legitimacy of his rulings. *See, e.g., Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir. 1994) (vacating arbitration award, and averring that "the parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed"); *Rosenhaus v. Jackson*, No. CV-14-3154-MWF (JCGx), 2016 U.S. Dist. LEXIS 122398, at *14 (C.D. Cal. Feb. 26, 2016) (vacating arbitration award, and stating that, "in nondisclosure cases, vacatur is appropriate where the arbitrator's failure to disclose information gives the impression of bias"); *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, No. 05 CV 10540 (RPP), 2006 U.S. Dist. LEXIS 44789, at *27 (S.D.N.Y. June 28, 2006) (vacating award based on an arbitrator's nondisclosure, because "it is important that courts enforce rules of ethics for arbitrators in order to encourage business to have confidence in the integrity of the arbitration process").

his illegitimate appointment as umpire over Endurance's objections, notwithstanding the wealth of other qualified candidates, all while incurring immense expense to defend Eder and strap him to the middle chair. *See* Opening Br. at 27-31.

Because it cannot challenge these undisputed facts, the Opposition instead seeks to excuse them. <u>*First*</u>, although Horseshoe admits (as it must) that Eder omitted to disclose his previous conflicts with Endurance's counsel, this obtrusive nondisclosure was just fine because Choate/Attisani is only "one of the lawyers" in the arbitration, and not a party. Opp. at 34. But, a conflict with Endurance's lead representative is every bit as dangerous as a conflict with Endurance -- or, perhaps more perilous, in light of trial counsel's appearance directly before an umpire -- and both federal and state courts accordingly observe with regularity that an arbitrator's failure to disclose facts *either* affecting a party or its counsel can irretrievably taint a proceeding. *See, e.g.*, *Barcon Assocs., Inc. v. Tri-County Asphalt Corp.*, 86 N.J. 179, 192-93 (1981) (arbitrators should "reveal any relationship or transaction that he has had with the parties **or their representatives**") (emphasis added); *Sanko S.S. Co., Ltd. v. Cook Industries, Inc.*, 495 F.2d 1260, 1264 (2d Cir. 1973) ("arbitrators should disclose fully all their relationships with the parties, whether these ties be of a **direct or indirect nature**") (emphasis added); *Richco Structures v. Parkside Vill., Inc.*, 82 Wis. 2d 547, 558 (1978) ("the neutral arbitrator must disclose at the outset

the relationships or transactions he or she has had with the **parties or with the representatives of the parties** to the arbitration proceeding") (emphasis added).[9]

*Second*, the Court should reject Horseshoe's slippery slope argument that, if this Court acknowledges Eder's bias, then "all three arbitrators [necessarily must] be presumptively biased." *See* Opp. at 30. Horseshoe is again playing fast and loose with the facts. There is no dispute that each party-appointed arbitrator complied with the bargained-for Contractual selection criteria, and no party has challenged either party arbitrator's impartiality or fitness to serve. *See* JA 093-095. The same *cannot* be said for Eder. Unlike the party arbitrators, Eder's appointment was made in derogation of the Contractual requirement of "*complete*[] *impartial*[*ity*]" and in the shadow of ICC's disclosure to Eder that one party desperately wanted him to serve and that the other cannot abide his service. JA 052; JA 077; JA 179; JA 190-93. Unlike the other arbitrators, Eder's candidacy has been mired in controversy thanks to the parties' serial objections to -- or supremely devoted demand for -- Eder's service (about which Eder remains fully aware).

---

[9] The Opposition's cavalier attitude toward Eder's concerted nondisclosures (even Eder has never represented that he simply 'forgot' to disclose) undermines the longstanding judicial imperative supporting early and comprehensive disclosure in arbitration. *See, e.g.*, *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 139 (2d Cir. 2007) ("Disclosure serves the twin goals of encouraging conflicts over arbitrators to be dealt with early in the arbitration process and helping limit the availability of collateral attacks on arbitration awards by a disgruntled party.") (citation omitted).

*Finally*, the Opposition asserts that there is no "real danger of bias," *Raydon*, 1998 Civil Jur. No. 231 [JA 156], "absent evidence of actual unfairness in the proceedings" -- a formulation *completely fabricated* by Horseshoe. Opp. at 33. Even if "actual unfairness of proceedings" were a judicially consecrated standard, the Opposition would be required to ignore (as it does) the record of manifestly unfair decisions Eder has made against Endurance, including his decision to petition the ICC against Endurance's objections and in favor of his appointment as fee-earning umpire in the Arbitration. JA 118. The Opposition instead adopts passive diction, contending that Eder only "*declin[ed] to withdraw*," and *"denied that he was biased*." Opp. at 35. Unfortunately, the facts belie any such restraint on Eder's part. Even after representing that it would "not [be] appropriate [for him] to comment" on Endurance's challenge to his own prospective service over Endurance's vehement objections, Eder abruptly labeled Endurance's challenge "entirely groundless" and "baseless." JA 118; JA 124. Given ICC's improvident disclosures and the unique facts surrounding Eder's history with Endurance's counsel, it would be impossible for Eder (or any other arbitrator in similar circumstances) to remain "*completely impartial"* and free from "*the appearance of bias*" here. Eder's tenacious grasping for the middle chair and his sniping at

Endurance's positions hammer home the point. Eder accordingly should be removed as umpire.[10]

## CONCLUSION

This Court should reverse the district court's order dismissing the Petition, and the Petition should be remanded to New York state court. In the alternative, this case should be remanded to the district court with instructions to replace Eder with a candidate complying with the parties' arbitration agreement.

Dated: February 14, 2024

Respectfully,

_D. A. C_

_____
David A. Attisani
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000
dattisani@choate.com

Melissa R. Ginsberg
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY  10011
(646) 829-9403
ginsberg@braunhagey.com

*Attorneys for Petitioner-Appellant, Endurance Specialty Insurance*
*Limited, on Behalf of Itself and its Branches and Affiliates*

---

[10] To the extent that Eder issues an award before this Court rules, Endurance reserves its rights to invoke all available remedies, including amendment of its submissions.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). The brief contains 5,409 words, as calculated by the word count of the word processing system used in preparing it, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i) and Local Rule 32.1(a)(4)(A).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2210 Build 16.0.15726.20188) 64-bit in Times New Roman 14-point font.

February 14, 2024

_____
David A. Attisani
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000
dattisani@choate.com
*Attorney for Petitioner*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

February 14, 2024

_____
David A. Attisani
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000
dattisani@choate.com
*Attorney for Petitioner*